**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ROBERT ACRE and MARGARET ACRE,                                          PLAINTIFFS/
Husband and Wife; FRANCES SMITH, a single person;          COUNTER DEFENDANTS
RUSSELL ACRE and ANITA ACRE, husband and wife;
PAUL ACRE and DONNA ACRE, husband and wife;
JERRY PEARSON and MARGARET PEARSON, husband
and wife; and DONALD McINTOSH and DIANE McINTOSH,
husband and wife

v.                                      No. 4:09CV00421 JLH

                                                                DEFENDANT/COUNTER-
SPINDLETOP OIL & GAS COMPANY                                      CLAIMANT

<u>**OPINION AND ORDER**</u>

The plaintiffs commenced this action against Spindletop Oil & Gas Company in the Circuit

Court of Faulkner County, Arkansas for judicial cancellation of oil and gas leases.  Subsequently,

Spindletop removed the case to this Court and asserted a counterclaim and third party complaint

against Chesapeake Exploration, LLC.  In a separate opinion, the Court dismissed Spindletop's third

party complaint for failing to state a claim.  Spindletop now moves for summary judgment, and the

plaintiffs have responded.  For the following reasons, Spindletop's motion for summary judgment

is denied.

Spindletop has operated an oil and natural gas well located in Faulkner County, Arkansas,

known as the "Sowash #1-4 Well" (hereinafter the "Sowash Well"), in accordance with leases for

mineral interests assigned to Spindletop in 1993.  The leases at issue are identified as the "Acre" and

"Sowash" leases.[1]  The Sowash Well taps an underground geological formation called the Hale

---

[1] The Acre lease was granted by Evans Acre and Verl Acre whose successors in interest
are plaintiffs Robert Acre, Margaret Acre, Russell Acre, Anita Acre, Paul Acre, Donna Acre,
Jerry Pearson and Margaret Pearson.  The Sowash lease was granted by Cecil Sowash and Lucille
Sowash whose successor in interest is plaintiff Frances Smith.

formation.   Spindletop ceased production in 2002.   While the Sowash Well was "shut-in," Spindletop paid royalties in accordance with the terms of the leases.   Another underground shale formation, the Fayetteville formation, also extends under the acreage block upon which the Sowash Well sits.   In 2004, geologists discovered that the Fayetteville formation could produce gas, and other companies began extracting gas from that formation.   Spindletop has decided not drill a well into the Fayetteville formation at present.

The plaintiffs allege that Spindletop breached the implied covenant in the Acre lease and the express covenant in the Sowash lease to market gas from the Sowash Well.   *See Amoco Prod. Co. v. Ware*, 269 Ark. 313, 321, 602 S.W.2d 620, 624 (1980) (oil and gas leases contain an implied "covenant to market the produce of producing wells."); Document #39-3, para. 5.   The plaintiffs also allege that Spindletop breached the implied covenant in both leases to explore and develop the mineral interests by failing to extract gas from the Fayetteville formation.   *See Saulsberry v. Siegel*, 221 Ark. 152, 155, 252 S.W.2d 834, 835-36 (1952) ("The test, as to whether there has been a breach of the implied covenant to explore and develop, is whether the lessee has acted with reasonable diligence so as to produce oil and gas upon the entire tract.").   Finally, the plaintiffs allege that Spindletop improperly shut-in the Sowash Well in 2002 since it was not capable of producing a commercially viable amount of gas at that time or in the two prior years.   *See* Document #39-3, paras. 3, 5 ("If a well capable of producing gas or gas-condensate in paying quantities located on the leased premises is at anytime shut-in and no gas or gas condensate therefrom is sold or used off the premises, nevertheless such shut-in well shall be deemed to be a well on leased premises producing has in paying quantities and this lease shall continue in force during all of time or times which such well is so shut-in. . . .").

In Arkansas, "the prudent operator standard is the test for determining whether a lessee has breached any of the implied covenants, including the implied duty to market." *SEECO, Inc. v. Hales*, 341 Ark. 673, 695, 22 S.W.3d 157, 170 (2000). Generally, where the operator cannot immediately market the gas because it lacks access to a collection pipeline, the operator is excused if the well is equipped and a market obtained within a reasonable amount of time. *Christianson v. Champlin Ref. Co.*, 169 F.2d 207, 209 (10th Cir. 1948); *Lelong v. Richardson*, 126 So. 2d 819, 829 (La. Ct. App. 1961). Further, under the terms of the Sowash lease, Spindletop agreed to "use *reasonable diligence* to market gas or gas condensate . . . under such terms, conditions or circumstances which, in [Spindletop's] judgment *exercised in good faith*, are" satisfactory. Document #39-3, para. 5 (emphasis added). Thus, the fundamental question regarding the plaintiffs' claim that Spindletop breached its duty to market the gas is whether Spindletop has acted reasonably and with due diligence.

Spindletop contends it acted reasonably as a matter of law in not marketing gas from the Sowash Well. According to the affidavit of Spindletop's geologist, Charles Howell, in 2007 Spindletop learned that Centerpoint Energy, who owned the pipeline which transported gas produced at the Sowash Well to market, had converted its collection pipeline into a distribution pipeline and could no longer accept gas from the Sowash Well. Document #39-5, paras. 10, 11. Howell states that in November 2007 Spindletop learned that Chesapeake had installed a new pipeline just over half a mile from the Sowash Well. *Id.* at para. 12. Despite entering negotiations in 2008, Spindletop was never able to gain access to Chesapeake's collection pipeline. *Id.* at para. 13. According to Howell, the "next nearest collection pipeline is several miles away from the Sowash Well, and therefore not a reasonably available market option to build a pipeline for such distance to resume

marketing of gas from the Sowash Well." *Id.* at para. 14. Therefore, Howell contends, "it is not feasible for a reasonably prudent operator to produce gas from the Sowash Well, *i.e.*, without access to a collection pipeline within reasonable proximity[.]" *Id.*

As noted, Howell asserts that Spindletop only learned that Centerpoint's pipelines were no longer available to transport gas from the Sowash Well in 2007. It is undisputed that the Sowash Well was shut in at the end of 2002. In light of this evidence that Spindletop waited nearly five years before attempting to market gas from the Sowash Well, the Court cannot find as a matter of law that Spindletop acted reasonably or exercised due diligence to market gas from the Sowash Well.

Further, Spindletop points to no evidence that it is likely to obtain a market within a reasonable time, as required under the rule from *Christianson*, 169 F.2d at 209. Indeed, according to Spindletop, it has not found an economically feasible method for transporting gas from the Sowash Well to market. Certainly, "[w]hat constitutes a reasonable time, of necessity, depends on the circumstances surrounding the drilling of each well." *Christianson*, 169 F.2d at 210. *See also Tate v. Stranolind Oil & Gas Co.*, 172 Kan. 351, 358, 240 P.2d 465, 470 (Kan. 1952) ("It is impossible to lay down an accurate general rule with respect to what constitutes production or marketing within reasonable time in every case. Whether either has been so obtained must be left to the particular facts of cases as they arise."). However, given the dearth of evidence that Spindletop will be able to market gas from the Sowash well in the foreseeable future, the Court cannot conclude as a matter of law that Spindletop has met the requirements of *Christianson*.

Spindletop also argues it acted reasonably as a matter of law in deciding not to develop the Fayetteville formation. Again, the prudent operator standard applies. *See SEECO, Inc.*, 341 Ark. at 695. "The test, as to whether there has been a breach of the implied covenant to explore and

develop, is whether the lessee has acted with reasonable diligence so as to produce oil and gas upon the entire tract." *Saulsberry*, 221 Ark. at 155.  Spindletop relies on Howell's affidavit testimony that geological surveys show that the Fayetteville formation underneath the Sowash Well acreage block is fractured, faulted or both.  Document #39-5, para. 16.  Consequently, according to Howell, Spindletop cannot determine if gas is recoverable from the Fayetteville formation in sufficient quantities to make the drilling of a new well cost effective.  *Id.*

In the instant case, Spindletop has developed only one well, which extracts gas from the Hale formation, upon a 640 acre tract.  Geologists have determined that the Fayetteville formation has the potential to produce marketable gas.  Further, there are multiple wells in close proximity to the Sowash Well and surrounding it which are producing gas.  Spindletop concedes that other oil and gas companies are producing from the Fayetteville formation.  Document #38, p. 5.  Before the Arkansas Oil and Gas Commission, Spindletop's attorney agreed that a well approximately fourth-tenths of a mile from the Sowash Well is producing gas from the Fayetteville formation.  Document #43-7, p. 51-52.  Construing the evidence in the plaintiffs' favor, the Court cannot conclude as a matter of law that Spindletop has diligently developed the tract "so as to produce . . . gas upon the entire tract." *See Vetter v. Morrow*, 361 So. 2d 898, 900 (La. Ct. App. 1978) ("In deciding whether development has been reasonable for the benefit of both lessor and lessee, the jurisprudence has usually considered the following factors: . . . (2) number and location of the wells drilled both on leased lands and adjoining property . . . and (6) acreage involved in the disputed lease."); *Sanders v. Birmingham*, 214 Kan. 769, 776, 522 P.2d 959, 966 (Kan. 1974) (factors for determining if the implied covenant to prudently develop has been breached include "the extent and results of the operations, if any, on adjacent lands[.]").

5

*Saulsberry*, relied upon by Spindletop, does not alter this conclusion.  In that case, the Arkansas Supreme Court affirmed a chancellor's decree that the well operators had not breached the implied covenant to act diligently to develop the entire tract.  *Saulsberry*, 221 Ark. 152.  The operator had drilled four or five wells to one formation on the thirty acre tract.  *Id.* at 153.  Another, lower formation was discovered.  *Id.*  Although sixteen or seventeen wells in the area had been drilled to the lower formation, only two of them produced any oil.  *Id.*  Nevertheless, the operators drilled a well to this lower formation once they learned of the second well—much closer to their lease—which managed to produce oil.  *Id.* at 153-54.  Most importantly, *Saulsberry* did not involve a motion for summary judgment.  A question of material fact remains regarding whether Spindletop has acted as a prudent operator would.

Finally, Spindletop contends that it properly shut-in the Sowash Well at the end of 2002 under the terms of the Sowash lease.  Spindletop argues that as a matter of law the Sowash Well was capable of producing natural gas.  Spindletop again cites Howell's affidavit testimony that "[a]t the time the Sowash Well was shut in, it still held commercially viable reserves of oil and gas in the lower Hale formation which, to this day, remain to be exploited, and the Sowash Well was capable of producing in paying quantities at the time that it was shut in."  Document 39-5, para. 9.  However, the plaintiffs offer monthly production reports for the Sowash Well showing that, in the two years[2] prior to being shut in, the well produced only about four and one half mcf per day.  Document #43-8.  A Spindletop engineer, Glenn Sparks, testified before the Arkansas Oil and Gas Commission that extraction at a rate of four and one half mcf per day does not constitute production in paying

---

[2] *See Ross Explorations, Inc. v. Freedom Energy, Inc.*, 340 Ark. 74, 81, 8 S.W.3d 511, 515-16 (2000) (holding that a period of twenty four months is reasonable for determining if a well is profitable).

quantities.  Document #43-7, p. 59.  Another of Spindletop's engineers, Dave Chivvis, explained to the Commission that the low yield amount could be explained by the fact that "the acreage out there is underdeveloped" and that there were multiple occasions of equipment malfunction or other problems.  Document #43-7, p. 26-27.  If Chivvis's explanation were disbelieved, a reasonable fact finder could conclude that the Sowash Well is no longer capable of producing in paying quantities. The Court cannot say that the evidence establishes as a matter of law that the Sowash Well was commercially viable when it was shut in.

For the foregoing reasons, Spindletop's motion for summary judgment is DENIED.

IT IS SO ORDERED this 22nd day of February, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE